## Case No. 4,568.

EVANS et al. v. PITTSBURGH.

[2 Pittsb. Rep. 405; 10 Pittsb. Leg. J. 233.]

Circuit Court, W. D. Pennsylvania. 1863.

Hamilton & Acheson, for plaintiffs.
Veech & White, for the city officers.

GRIER, Circuit Justice. The plaintiffs obtained their several judgments against the city of Pittsburg, at May term, 1861, for interest due in 1852 and 1853, on coupons on railroad bonds. At November term, 1861, [Case No. 4,567], the plaintiffs' attorneys applied to the court by petition, to direct "that a mandatory writ be issued directly to the controller and treasurer of the city, commanding the said controller to prepare and deliver to the said plaintiff or his attorney, a warrant on the treasury for the amount of the judgment, payable out of any money in the treasury, or if there be no money in the treasury, then out of the first money that shall come into the treasury," etc. The court made the order requested, no question having been made as to whether it was directed to the proper persons or not. It was entirely ex parte, and without notice to the defendants' attorneys. They have therefore a right to meet the rule in this case for an attachment, by an allegation that the mandamus writs which have been served on those officers have been improvidently issued, and that the process should have issued to the mayor and city councils; and consequently that the court, instead of enforcing obedience to the mandatory process, should set it aside as irregular and void.

The supreme court of Pennsylvania has decided that the act of 15th of April, 1834, which provides a mode for enforcing the payment of judgments against counties and townships, should be applied to cities also. In conformity with which decision this court decided in the case of Evans v. Pittsburg [Case No. 4,567], that such process might issue from this court to enforce the payment of judgments obtained in the circuit court of the United States. To what officers of the corporation should this mandatory process issue? The law requires it to issue to the commissioners who have the taxing power. "The only means that a municipal corporation has for the payment of its liabilities is the power of taxation." 4 Casey [28 Pa. St.] 210. Its property necessary for public purposes cannot be levied or sold. The command of the mandatory writ authorized by the statute is, "to cause the amount of the judgment, with interest and costs, to be paid, etc., out of any moneys unappropriated of such county, or if there be no such moneys, out of the first moneys that shall be received for the use of said county." The proper party, therefore, to such process should be those who have the power of taxation, who have the executive and legislative powers of the corporation, and can "cause the money to be paid." The treasurer is but the servant of this power; he is merely the collector of the city taxes and the custodian of its funds, bound to receive and keep them as city councils may direct, and to pay them out only upon the warrants of the mayor, countersigned by the controller, and drawn upon specific appropriations made by the councils according to law.

The answer of the treasurer to the interrogatories sets forth clearly and correctly his position in this matter, and contains the statement of facts which we must assume to be correct for the purposes of the present motion. In answer to the 7th interrogatory he states that "the judgments of the plaintiffs had not been paid either in whole or in part, because there was no money in the treasury which could be legally appropriated to such payment. All the moneys that have been received in the treasury, and all the moneys now in the treasury, have been and are specifically appropriated by ordinances of the city councils, under acts of assembly, authorizing and directing the same to be done. The act of 6th April, 1850, directed that the councils should each year, previous to the annual levy, assign and appropriate the revenue of said city derivable from all sources, and prescribed the order in which it should be applied, to wit: 1st, for the payment of interest for the funded debt; 2d, the payment of salaries of city officers; 3d, for the payment of the ordinary current expenses of the city; and, 4th, for extraordinary improvements. erections, and purchases; and if there be any surplus it is to be paid into the sinking fund created by the said act. The act of 10th of May, 1857, directed that the moneys arising from the assessments for grading and paving should be paid into the sinking fund, and should be applied to the same purposes. and held under the same restrictions, as the other moneys of that fund. In pursuance of said acts the city councils did, in the month of January in each of the years 1861 and 1862, 'assign and appropriate' all the revenue of those years, respectively, to and for the purposes authorized and directed by said act. There has not, therefore, any money come into the hands of the city treasurer, and there is now none in his hands which, as he has been advised, he could have legally applied, or which he can now legally apply to the payment of the plaintiffs' judgments." The funded debt here mentioned in the act is the old debt incurred for the cost of erection of the water works, etc. These bonds of the city, for railroad purposes have all been issued since the passage of the act above referred to. It was the duty of the city councils to assess a tax sufficient to liquidate the interest of the bonds. as it became due. In-

stead of an honest endeavor to meet their liabilities, and support the credit and honor of the city, the councils have chosen to litigate and repudiate their obligations, to obstinately resist every process of the courts and evade the performance of their official duties. "Pudet haec opprobria dici et non potuisse repelli." From the public legal history of the courts, we see that the supreme court have by mandamus endeavored to compel a faithful execution of these duties; but it does not appear from the facts in evidence that one dollar has ever been raised for the purpose of paying off these judgments.

It is no fault of the treasurer that he has no moneys of the city "unappropriated" in his hands. He has acted in this matter with integrity and honor. We cannot give two different definitions to the terms "assign and appropriate," as used in the act of 1850, and the negative "unappropriated," in the act of 1834. It was the duty of the councils to increase their assessments to a sum sufficient to cover the payment of these interest coupons, and "assign and appropriate" a sufficient portion of the money in the same order as directed by that act for the payment of the interest of precedent debts. The honor, credit and character of the city and its citizens are as much bound to see the interest paid on their late debts as on their earlier ones. The fact that the money first borrowed was judiciously expended, and the latter not, can make no difference to the grade of the obligation. A conscience, it is said, cannot be imputed to a corporation; but the corporators and citizens, who enjoy its franchises, will be held as morally, if not legally, responsible before the world.

The case of Monaghan v. City of Philadelphia, 4 Casey [28 Pa. St.] 207, is cited as having definitely settled the question. If a case presenting the points raised in this case, and on the same state of facts, had been decided by the supreme court of the state, it would have relieved my mind very much in the decision of this case. Their construction of their own peculiar statutes is conclusive, and I would not question its correctness. But in that case no question was raised as to "appropriation" of coming funds of the city. Monaghan's judgment was for some services rendered to the city, or on some contract, payable, as all other of the current expenses of the city, out of its general funds in the hands of the treasurer. The money in the treasurer's hands was appropriated to pay just such demands. Monaghan's bill was disputed, and he could not get an order for the amount of his claim. He is compelled to bring suit; he recovers a judgment, and the court decides that the judgment of the court is the highest evidence of the justice of the claim, and that it was the duty of the treasurer to pay the judgment without an order from the mayor or controller. There was no pre-

tense that the treasurer had not sufficient funds of the city in his hands unappropriated to any other special purpose. In fact, so far as any "appropriation" existed, it was to pay just such demands as that sued for; and the judgment of the court was justly considered to be the first appropriation of so much of the general fund as was necessary to satisfy the demand; consequently, it was entitled to be paid out of any money in the treasury, and the first that should be received in it, without any further order of the officers of the corporation. An answer of the treasurer that such money was necessary for more important purposes, and to support the government of the city in the exercise of its functions, could be no objection to the appropriation made by the judgment of the court. By the theory of that case, the treasurer had sufficient funds in his hands to pay all the demands, and the only question was whether the judgment of the court was not itself a specific appropriation of that amount to that purpose. There was no default in the city councils; they had furnished means; the only difficulty was in the treasurer's refusal to pay.

The case before us has no resemblance to that of Monaghan. Here the treasurer has no "unappropriated funds" in his hands, nor any appropriated to the payment of these demands. The judgment of the court is not an appropriation of that which was appropriated beforehand, by virtue of the statute, or acts of councils. It is clear that the special funds ordered by statutes to be paid into the sinking fund were "appropriated," and could not by any act of the court be "assigned and appropriated" to a different purpose. Nor can I make any definition of those terms which would not also apply to the appropriations made for other purposes. The writ authorized by the statute does not make a new appropriation of funds, in the hands of the treasurer, at the expense of others, but affects only such as are unappropriated to other special purposes. It was properly decided, in the case of Pollock v. Lawrence Co. [Case No. 11,-255], that the estimate of the commissioners, as to the funds needed for the coming year, whether right or wrong, was not an "appropriation" of them to pay any particular debt due by the county; consequently the judgment of the court was the first appropriation, and should have precedence. The definition there given of the term "appropriation," "to set apart or vote a particular sum of money for a particular purpose," as given by the learned judge, is undoubtedly correct, and according to it the answer of the treasurer is true, not only in its assertion of facts, but in its inference of the law: The funds committed to his care were appropriated and set apart for certain special objects, and consequently he had no unappropriated funds with which to

satisfy the exigency of the process served on him, nor could he, under existing circumstances, have any. If the assessments are increased by order of the councils to an amount sufficient to pay their debts, being of the same order as the old debts, and the treasurer should have funds from taxes in his hands, and would not apply them to the judgments, the writ might then interfere to compel him to appropriate the money as it came to his hands, to their payment. If the town councils, in pretended obedience to the orders either of their own supreme court or of this court, pursue the plan of the commissioners to baffle the collection of those claims by the ingenious contrivance of two separate assessments, one to be paid and one not to be paid, or by anticipating the funds before they reach tne treasury by orders or posterior appropriations, such conduct may be treated as a contempt of court, and the treasurer possibly made a party. But as the case stands at present, the treasurer is not in contempt, because the writs issued by this court have been improvidently issued and must be set aside. Under the circumstances disclosed in this case it is clear that the process should have issued to the city councils, as the legislative power, and the mayor and controller, the proper executive officers, whcse duty it was to "cause the money to be paid," and who only had the power. If after a due performance of their several duties, the treasurer, who is their officer or servant, should refuse to perform any duty imposed on him, or attempt, by ingenious devices, to evade the performance of it, he may be treated as for a contempt by serving the proper process upon him for that purpose. Let the rule be discharged, and the several writs set aside.